DECISION
This Court has considered the parties' arguments in the above-entitled action, Christine Donilon v. City of Providence, relating to Defendants' motions in limine. An order shall enter, for the reasons cited below, limiting the scope of permissible subjects for testimony at trial.
 I Plaintiff Must Answer Defendants' Request for Discovery
During discovery, Defendants requested that Plaintiff produce witness statements, expert reports, and medical documentation. Responding that she had no responsive documents in her possession, custody, or control, Plaintiff provided no information as to what the Plaintiff's witnesses knew, or about what they would be called to testify. As the date of the trial approached, Plaintiff provided, in response to a defense request, an initial list of 25 preliminary witnesses. In response to an additional Defense request that Plaintiff identify each witness and give a description of that witness's testimony, the Plaintiff provided limited detail with respect to two witnesses. As to 23 other witnesses, the Plaintiff responded with a blanket statement noting *Page 2 
that the proposed witnesses will testify as to
 issues surrounding (i) their documented job duties; (ii) their actual job duties; (iii) their efforts to secure employment once Defendant Cicilline became mayor-elect; (iv) the observations and knowledge of work performance and duties within the Department of Recreation and or Human Services during the relevant time period, [and] (v) their personal work performance during the relevant time period within the Departments of Recreation and or Human Services during the relevant time period. (Pl.'s Resp. to Defs.' Interrogs.)
Plaintiff supplemented that list with nine additional witnesses, three of whom would testify "as to the plaintiff's damages[,]" two of whom would testify "as to a meeting between defendant Cicilline and the plaintiff[,]" and four of whom would testify as to the same issues as the original 23.
Plaintiff's responses to Defendants' discovery request are non-responsive. The Plaintiff's current level of disclosure leaves to the Defendants the task of guessing whom the Plaintiff will actually call to testify and what they will testify about — making it impossible for the Defendants to meaningfully "prepare for trial free from the elements of surprise and concealment[.]" Narragansett Elec. Co. v.Carbone, 898 A.2d 87, 95 (R.I. 2006) (internal citation omitted). It is well settled that broad powers of discovery are granted to each party so as "to enable litigants to prepare for trial free from the elements of surprise and concealment so that judgments can rest upon the merits of the case rather than the skill and maneuvering of counsel."Id. Such a lack of disclosure will substantially prejudice the Defendants' ability to defend this case and is inconsistent with the purpose of modern pleadings "`to define with clearness and reasonable certainty the issue to be tried.'" Martin v. Lilly, 505 A.2d 1156, 1162
(R.I. 1986) (quoting Coro Federal Credit Union v. Correia, 95 R.I. 134,136, 185 A.2d 106, 107 (1962)).
Accordingly, the Plaintiff is ordered, within fifteen days of this decision, to specify which of the thirty-four witnesses she actually intends to call and provide Defendants with a specific description as to what each witness is expected to testify to at trial. If any of the Plaintiff's *Page 3 
witnesses are to be called as expert witnesses, the Plaintiff, within fifteen days of this decision, is to provide to Defendants the following as to each such expert witness: the expert's qualifications, whether the expert has provided any written documents to Plaintiff, and unless otherwise already included, a summary of that expert's expected testimony. See Super. R. Civ. P. 26(b)(4).
Defendants further request that this Court exercise its authority to limit cumulative testimony. This request is premature. The Court will grant Defendants' request that trial be reasonably delayed until such time as counsel for the Defendants can evaluate the information received and file whatever motions it deems necessary.
 II Hearsay Testimony is Excluded
Defendants seek the exclusion of the testimony of Ms. Margaret Enright. In response to an interrogatory asking the Plaintiff to identify the substance of each encounter Ms. Enright had with the Plaintiff and Defendant Cicilline, the Plaintiff answered that Ms. Enright was "within eyesight" but was "not a party to the conversation" and did not learn of the substance of the discussion until "after [Plaintiff's] conversation with Defendant was over and [Plaintiff] communicated the substance of the conversation to Ms. Enright." Ms. Enright's only knowledge of what occurred or what was said is based on hearsay. See R.I.R. Evid. 801 (c). Accordingly, Ms. Enright may not testify as proffered. Additionally, based on the Plaintiff's response to an interrogatory indicating that Ms. Kathy Marcott "has no information relative to this lawsuit," the Court shall exclude Ms. Marcott's testimony as irrelevant. See R.I.R. Evid. 402.
In addition to specifically excluding the testimony of Ms. Enright and Ms. Marcott, Defendants request this Court to exclude all evidence and testimony on events which are based on hearsay. Defendants argue that the cumulative effect, if the Plaintiff is permitted to testify as to events supported only by hearsay, is that such testimony may have a deleterious effect on the jury even if Defendants are successful in raising objections. The Court grants Defendants' *Page 4 
motion in accordance with R.I.R. Evid. 802. However, this ruling should be interpreted as in no way prejudicing the Plaintiff's right to make use of the myriad potential exceptions to the hearsay rule that would permit its introduction as evidence. See R.I.R. Evid. 803(1)-(24), 804(b).
 III The Statute of Limitations A The Statute of Limitations Bars Plaintiff's Claims Priorto February 27, 2003
Regarding relevancy, Defendants urge this Court to limit the admissibility of any testimony about events occurring on or after February 27, 2003, or one year before the date on which they claim the Plaintiff filed her State Fair Employment Practices Act, ("SFEPA") §§ 28-5-1 to 28-5-42, charge against the City with the Rhode Island Commission for Human Rights (the "Commission"). The Commission has jurisdiction to investigate claims of discrimination that "have occurred, have terminated, or have been applied to affect adversely the person aggrieved, whichever is later, within one year. . . . []" Sec. 28-5-17 (a). Before allegations of discrimination under SFEPA may be heard in the Superior Court, a complainant must file a charge with the Commission which may then, at the request of either of the parties, grant a "Right-to-Sue" terminating the commission's proceedings and giving the Superior Court jurisdiction to hear the matter. See
§ 28-5-24.1(a). Pursuant to Horn v. Southern Union Co., 927 A.2d 292, 295
(2007), claims of discrimination under Rhode Island's SFEPA, §§ 28-5-1 to28-5-42, must be filed within one year, and the relevant period extends only for one year prior to that filing.
Plaintiff argues that the unsigned paper submitted to the Commission earlier on October 27, 2003, is a charge. However, Defendants contend that Plaintiff's written submission — missing the signature, name, and address of the Plaintiff — does not qualify as a cognizable charge *Page 5 
empowering the Commission to begin an investigation, thus, rendering the February 27, 2003 date, stemming from the February 26, 2004, charge the appropriate cut off date. Defendants principally rely on Commission rule 4.03: "The charge shall be in writing. The original charge, signed and verified by the complainant before a notary public or other person duly authorized by law to administer oaths, shall be filed with the Commission. Notary services, when available, shall be furnished without charge by the Commission." RI ADC 94 040 002.4.03. Defendants emphasize that under RI ADC 94 040 002.4.04, charges must contain, among other elements, the full names and addresses of those involved in the dispute and a concise statement of the facts, including the dates of the alleged discrimination.
It is the policy of this jurisdiction to allow for the widest possible latitude in filing charges with the Commission. See § 4.08 (Providing that "Notwithstanding the provisions of Rules 4.03 and 4.04 of the Commission Rules and Regulations, a charge is deemed filed when theCommission receives from a person a written statement sufficientlyprecise to identify the parties and to describe generally the action orpractices complained of. . ." (emphasis added) and further providing that "A charge or any part thereof may be amended to cure technical defects or omissions, including failure to swear to the charge, or to clarify and amplify allegations made therein, and such amendments relate back to the original filing date. . . ."). It is clear, however, after review of the document, that the Plaintiff's written submission on October 27, 2003, fails to meet even the minimal standards for a charge under § 4.08. Not only is the document unsigned and un-notarized, a condition which could be cured by an amendment under § 4.08, the document fails to even specify who the complainant is, either by name or address. Thus, the written submission cannot even fairly be said to be ". . . sufficiently precise to identify the parties. . . ." Therefore, this Court finds that the Plaintiff's charge was filed on February 26, 2004, and the corresponding look back period extends from one year from that date to February 27, 2003. *Page 6 
 B Plaintiff's Claims Do Not Allege Continuing Violations
Plaintiff may contend that even though § 28-5-17(a) imposes a one year statute of limitations, she should still be permitted to introduce evidence from before that date because Plaintiff's alleged discriminatory treatment constitutes a continuing violation. The continuing violation doctrine is an equitable exception to the statute of limitations when discrimination is alleged to be ongoing. SeeProvencher v. CVS Pharmacy, Division of Melville Corporation,145 F.3d 5, 13-14 (1st Cir. 1998) ("A continuing violation allows a plaintiff not only to allege otherwise time-barred acts, but more concretely, to receive damages, such as back pay, based on and reaching back to those acts.") To assert a claim under the continuing violation doctrine, a "complaint must indicate that not only the injury, but the discrimination, is in fact on-going." Goldman v. Sears, Roebuck Co., 607 F.2d 1014, 1018 (1st Cir. 1979); Velazquez v. Chardon,576 F.Supp. 476, 477 (D. Puerto Rico 1983). Importantly, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusalto hire are easy to identify []" and defeat an allegation of a continuing violation. Serrano-Nova v. Banco Popular de Puerto Rico,Inc., 254 F. Supp. 2d. 251, 261. (D. Puerto Rico, 2003) (emphasis in original). Thus, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable `unlawful employment practice.' A plaintiff can only file a charge to cover discrete acts that `occurred' within the appropriate time period."Id. (internal citation omitted).
Since her return to the Recreation Department from the Parks Department in July 2002, the only allegation of discrimination by Plaintiff is her May 1, 2003, termination. This is a discrete act, and Plaintiff's complaint fails to allege any ongoing discriminatory acts or occurrences. Accordingly, testimony as to any other allegations of discrimination occurring prior to February 27, 2003, is time-barred by the statute of limitations. Additionally, the Court would *Page 7 
note that discriminatory events, remote in time, though true, have been found inadmissible because, due to the remoteness of the alleged actions, testimony as to those actions is "both irrelevant and more prejudicial than probative. . . ." Perry v. Ethan Allen, Inc.,115 F.3d 143 (2nd Cir. 1997). The Plaintiff's claim here pertains to her May 1, 2003, termination. Because the Plaintiff's other claims of discrimination are time-barred it would be unduly prejudicial to permit the Plaintiff to present testimony or reference any alleged prior discrimination occurring more than one year prior to the date of the Plaintiff's complaint to the Commission. See id.
 C Plaintiff's Claims of Wage Discrimination are Subject to a One Year Statue of Limitations
Where state law fails to apply a specific statute of limitations to a labor law claim, the Rhode Island Supreme Court generally has required application of the analogous federal statute of limitations. See Boardof Trustees, Robert H. Champlin Memorial Library v. Rhode IslandState Labor Relations Board, 694 A.2d 1185, 1189 (R.I. 1997). However, in Horn v. Southern Union Co., 927 A.2d 292, 294-295 (R.I. 2007), our Supreme Court extended the SFEPA one year statute of limitations provision to Rhode Island Civil Rights Act, § 42-112-1 to § 42-112-2, ("RICRA") claims because ". . . in many instances, an aggrieved party may assert the same employment discrimination allegations as the basis for both a FEPA claim and a RICRA claim." Id. at 293. Determining that the statutes were in pari materia, our Supreme Court found that it would not make sense to bar a claim for discrimination under SFEPA while allowing a remedy for the very same factual scenario and the very same harm under the RICRA statute. Accordingly, the Court held that the SFEPA one-year statute of limitations applied to RICRA actions.[1]
Plaintiff contends that her wage discrimination claim is timely and that the appropriate *Page 8 
statute of limitations is the three-year period contained in29 U.S.C. § 255(a), the statute of limitations for analogous federal actions. However, this Court finds that the one-year SFEPA statute of limitations constitutes a specific state law limitations period and applies to alleged violations of the Rhode Island "Wage Discrimination Based on Sex" act. Sections 28-6-17 to 28-6-21. Under § 28-6-18(a), "[n]o employer shall discriminate in the payment of wages as between the sexes or shall pay any female in his or her employ salary or wage rates less than the rates paid to male employees for equal work or work on the same operations." Likewise, under the SFEPA no employer may, based on an employee's "race or color, religion, sex, sexual orientation, gender identity or expression, disability, age, or country of ancestral origin," § 28-5-7(1)(i), ". . . discriminate against [that employee] with respect to hire, tenure, compensation, terms, conditions or privileges of employment, or any other matter directly or indirectly related to employment." Sec. 28-5-7(1)(ii). RICRA, too, provides the same protection against discriminatory employment practices. See Horn v.Southern Union Co., 927 A.2d at 294-295. ("The FEPA reflects the General Assembly's weighing of policy considerations and its legislative judgment that one year is the appropriate amount of time within which claims of employment discrimination should be brought, and we would be most reluctant to second-guess that considered legislative determination.") Because here, as in Horn, the statute at issue, § 28-6-18(a), provides a remedy for the same type of facts seeking the same remedy based upon the same harm, the Court finds Plaintiff's allegations of wage discrimination to be time-barred. Additionally, Plaintiff cannot escape the application of the SFEPA statute by alleging that each additional paycheck constituted an additional violation as the alleged discrimination would have occurred at the time her pay was set, rather than each time her check was issued. See Ledbetter v. GoodyearTire Rubber, 550 U.S. 618, 618 (2007) (reasoning that the discrimination occurred at the time the initial pay rate was set and that ". . . current effects alone cannot breathe life into
prior, uncharged discrimination"). In accordance with these limitations, the Plaintiff shall limit *Page 9 
the evidence she seeks to introduce to those events that took place after February 27, 2003.
 IV Testimony about the Acts of Those without Decisional Authority is Barred
Defendants further request this Court limit Plaintiff's testimony to exclude any alleged discriminatory acts or statements by persons, other than the actual decision-makers, unless the Plaintiff can demonstrate that the actual decision-makers were aware of such discriminatory acts or statements and such acts or statements influenced the actual decision-makers to take the adverse employment action against the Plaintiff. In proving claims of discrimination, evidence of the discriminatory attitudes or activities of co-workers is generally only admissible if those co-workers are the actual decision-makers who exercise authority over the plaintiff or if they are primarily responsible for a particular employment decision. See Hill v. LockheedMartin Logistics Management Inc., 354 F.3d 277 (4th Cir. 2004);accord Heno v. Sprint/nited Management Co., 208 F.3d 847, 856 (10th Cir. 2000). Thus, Plaintiff may not introduce any testimony as to acts or statements by persons who did not have decisional authority or input into employee decision-making, unless she can demonstrate that those acts or statements influenced those with actual decisional authority to take adverse employment action against the Plaintiff.
 V Testimony Showing the Reorganization was Pretextual isAllowed
Finally, Defendants request this Court limit Plaintiff's testimony about her allegations that she was terminated without due process. Defendants point to the well-recognized "reorganization exception" to the requirement that those terminated receive a pre-termination hearing.See Day v. City of Providence, 338 F. Supp.2d. 310, 317 (D.R.I. 2004) (quoting Duffy v. Sarault, 892 F.2d 139, 147 (1st Cir.)) ("Where a reorganization or other cost-cutting measure results in a dismissal of an employee no hearing is due.") However, where, as here, Plaintiff contends that her termination was discriminatory or retaliatory, she is entitled to put on evidence *Page 10 
demonstrating that the supposed reorganization was pretextual and that she was entitled to a hearing. See Duffy, 892 F.2d at 147. Furthermore, the fact that other employees were laid off or let go is not conclusive on the issue. Even if the entire plan for layoffs was not simply a pretext for Plaintiff's termination, Plaintiff is entitled to show that her inclusion in the plan was a pretextual excuse for her dismissal.See Smith v. F.W. Morse Co., 76 F.3d 413, 422 (1st Cir. 1996) ("employer who selectively cleans house cannot hide behind convenient euphemisms such as `downsizing' or `streamlining.' Whether or not trimming the fat from a company's organizational chart is a prudent practice in a particular business environment, the employer's decision to eliminate specific positions must not be tainted by a discriminatory animus.") Accordingly, this Court denies Defendant's motion in limine to exclude any reference to the fact that the Plaintiff was terminated without a hearing.
For the above reasons, this Court grants, in part, and denies, in part, Defendants' motions in limine. Counsel shall submit an appropriate order for entry.
[1] The Court notes that the Horn decision was limited to RICRA claims arising out of employment discrimination. 927 A.2d at 293 n. 2. *Page 1